IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **BENCH BILLBOARD COMPANY**, | : | Case No. 1:07cv589 |
| | : | |
| Plaintiff, | : | District Judge Susan J. Dlott |
| | : | |
| v. | : | ORDER GRANTING IN PART |
| | : | AND DENYING IN PART |
| **CITY OF CINCINNATI**, | : | MOTION TO DISMISS |
| | : | |
| Defendant. | : | |

This matter is before the Court on the City of Cincinnati's motion to dismiss Bench

Billboard Company's amended and supplemental complaint ("Complaint").  (Doc. 24.)  For the

reasons that follow, the Court **GRANTS** in part and **DENIES** in part Defendant's motion.

I.      **BACKGROUND**

Bench Billboard Company ("Bench Billboard") brings nine claims against the City of

Cincinnati alleging violations of its First and Fourteenth Amendment rights and breach of a 1996

settlement agreement, and seeking declaratory judgment, injunctive relief, and damages.  (Doc.

22.)  The claims stem from the City's amendment of Cincinnati Municipal Code ("C.M.C.") §

723-20, which pertains to the regulation of advertising benches, and its revocation of Bench

Billboard's special street privilege, which had allowed Bench Billboard to place its benches at

bus stops throughout Cincinnati notwithstanding municipal code provisions relating to the

placement of benches on the public right of way.  The City denies Bench Billboard's claims and

moves to dismiss the Complaint in its entirety.

Bench Billboard is in the business of advertising products and services on the back rests

of benches that it installs on both public and private property.  The advertising benches are

1

typically located near bus stops to be used in conjunction with public bus transportation.  The benches are approximately two feet wide, six feet long, and forty-two inches tall.  The back rest that forms the advertisement space is two feet high by six feet wide, resulting in twelve feet of advertising space.  Bench Billboard benches are located at approximately 360 bus stops in the City.

The crux of Bench Billboard's Complaint is that the City affords preferential treatment to other types of advertising located in the City's public right of way.  The Cincinnati Municipal Code prohibits the placement of signs containing advertising in the public right of way "unless displayed by a governmental entity or pursuant to a revocable street privilege."  C.M.C. § 1427-07.  Thus, Bench Billboard may not place its benches in the public right of way unless it has a street privilege to do so.  However, notwithstanding the language of § 1427-07, the City has authorized or allowed the placement of other types of advertising on its public right of ways, including bus shelters, newsracks, street banners, sidewalk signs, large display banners, litter receptacles, and kiosks.

Of particular concern to Bench Billboard is the alleged preferential treatment afforded to Southwestern Ohio Regional Transit, Inc. ("SORTA") for its bus shelters.  SORTA is a regional transit authority that operates the transit system for the City.  In 1979, SORTA entered into an agreement with Bus Stop Shelters, Inc. ("BSS") that granted BSS the right to erect bus stop shelters with advertising material.  By Ordinance No. 465-1979, BSS was permitted to erect such shelters "notwithstanding any provisions of the Cincinnati Municipal Code relating to posting of advertising signs on public property or public rights of way."  Although Ordinance No. 465-1979 has been repealed, the City Manager has issued revocable street privileges to BSS's successors

2

to erect and maintain bus stop shelters with advertising notwithstanding otherwise applicable sections of the Municipal Code.  Ord. 283-1995.

Until recently, Bench Billboard, like SORTA, had a "special street privilege."  Bench Billboard's privilege, which had been in place since 1996, permitted it to place up to two advertising benches at bus stops in the city.  Ord. 187-1996.  The special street privilege was granted to Bench Billboard as part of the settlement of a 1993 lawsuit in which Bench Billboard claimed that the City gave preferential treatment to bus stop shelter and newsrack advertising. On August 2, 2006, the City repealed the ordinance that granted Bench Billboard the special street privilege.  Ord. 220-2006.

With the repeal of the ordinance, Bench Billboard became subject to the regulations of C.M.C. § 723-20, which required that Bench Billboard apply for a permit for its benches to remain in the right of way.  Bench Billboard applied for permits for all its benches on August 3, 2006.  On December 26, 2006, Bench Billboard applied a second time for the permits and included a check in the amount of $7220.  The City cashed the check but did not issue the permits.   Then, on June 6, 2007, the City amended § 723-20 and Chapter 895 of the Code, "which had the general effect of aggravating the already unequal and disparate treatment accorded advertising benches vis-a-vis advertising bus shelters, newsracks, street banners, and other advertising."  (Doc. 22 ¶ 51.)   On November 28, 2007, the City again amended § 723-20, thereby, among other things, tripling the annual renewal fee by requiring a new application each year.  On November 30, 2007, Bench Billboard, for the third time, requested the City to issue the permits for its bench advertisements.  To date, the permits have not been issued.

3

Among the many restrictions set forth in the revised § 723-20 is a limit of only one advertising bench at a bus stop, and no advertising bench is permitted if the location already has an existing bus stop shelter, advertising bench, or park bench.  C.M.C. § 723-20(b)(3). Additionally, the advertising on the bench must be no larger than eleven square feet in area. C.M.C. § 723-20(b)(4).  Advertising benches also fall within Cincinnati Municipal Code's definition of off-site advertising and are thus subject to the strictures of Code Chapter 895.

 As a result of the revocation of its special street privilege and the subsequent amendment of § 723-20, Bench Billboard claims that it is now "in an even more inferior position vis-a-vis other companies advertising on the right of way than the position which [Bench Billboard] occupied prior to its lawsuit against the City in 1993, *i.e.*, advertising bus shelters, news racks, street banners, litter receptacles and sandwich board signs were once again given significantly more preferential treatment over advertising benches in the City right of ways."  (Doc. 22 ¶ 44.) Bench Billboard claims that C.M.C. § 723-20 delegates to the City Manager unbridled discretion to grant or deny permits for advertising benches (First Claim); § 723-20 constitutes an unlawful prior restraint of its exercise of its First Amendment right of free speech (Second Claim); § 723-20 and Chapter 895 constitute an unlawful infringement on Bench Billboard's rights under the First Amendment because the restrictions are more extensive than necessary (Third Claim); the City unlawfully discriminates against Bench Billboard in violation of its First Amendment Rights, its right to due process, and its right to equal protection (Fourth Claim); the City's revocation of its special street privilege violated its right to substantive due process (Fifth Claim); all the above actions by the City were taken under the color of state law (Sixth Claim); and the City breached the 1996 settlement agreement (Seventh Claim).  Bench Billboard also

4

seeks a declaratory judgment that C.M.C. § 723-20 and Chapter 895 are void as unconstitutional on their face and as applied (Eighth Claim) and injunctive relief enjoining the City from enforcing § 723-20 and Chapter 895 against it until the Court has ruled on the constitutionality of the sections (Ninth Claim).

Although Plaintiff alleges a separate claim under 42 U.S.C. § 1983 (Sixth Claim for Relief), § 1983 is not a source of substantive rights.  *Mount Elliott Cemetery Ass'n v. City of Troy*, 171 F.3d 398, 400 (6th Cir. 1999) (citing *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979)).  Thus, for housekeeping purposes, the Court hereby dismisses the Sixth Claim but acknowledges that Plaintiff's claims are brought against the municipality under § 1983.

## II.    ANALYSIS

### A.    Standing

The City moves to dismiss the Complaint in its entirety on grounds that the Court lacks jurisdiction.  Specifically, the City alleges that Bench Billboard does not have an "injury in fact" sufficient to constitute standing to file this action because Bench Billboard "did not allege any specific unconstitutional adverse enforcement action already taken against it by the City" and "does not possess any First Amendment or other constitutional interest that the City could have violated."  (Doc. 24 at 4.)

Under Article III of the Constitution, standing is a threshold inquiry in every federal case. *MX Group, Inc. v. City of Covington*, 293 F.3d 326, 332 (6th Cir. 2002) (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)).  To satisfy Article III's standing requirements, a plaintiff must show "(1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the

challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Cleveland Branch, N.A.A.C.P. v. City of Parma, OH*, 263 F.3d 513, 523-24 (6th Cir. 2001) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 180-81 (2000)).

Bench Billboard alleged in the Complaint that since 1979 the City has permitted a private company to erect bus shelters with advertising on its right of ways "notwithstanding any provisions of the Cincinnati Municipal Code . . . relating to posting of advertising signs on public property or public rights of way" but has not given Bench Billboard similar privileges. (Doc. 22 ¶ 11.)  In response to a complaint filed against it by Bench Billboard, the City in 1996 issued a special street privilege to Bench Billboard to put it more in parity with the treatment afforded the advertising bus shelters.  (*Id.* ¶ 37.)  Nevertheless, in 2006, the City revoked Bench Billboard's special street privilege which subjected it to the more restrictive provision of Code § 723-20.  The Complaint also alleges that the City continues to allow, with virtually no regulation, the placement of commercial advertising on newsracks, street banners, litter receptacles, and sandwich boards signs on the public right of ways.  (*Id.* ¶ 44.)  The Complaint alleges that the revocation of its street privilege violates the terms of the settlement agreement between the parties and that the City's disparate treatment of bench advertising compared to other advertisers violates the First and Fourteenth Amendments.  Bench Billboard claims that when the City enforces the Code, it will be forced to remove all of its benches resulting in lost revenue.

These allegations are sufficient to satisfy Article III standing requirements.  The injury in fact alleged by Bench Billboard is lost revenue due to revocation of the street privilege and

enforcement of § 723-20.  Contrary to the City's argument, the alleged injury is imminent and not conjectural: the City in its motion to dismiss confirmed its intent to enforce § 723-20.  (Doc. 24 at 4 n. 6.)[1]  None of Bench Billboard's advertising benches conform with the ordinance's requirements.  Accordingly, when the ordinance is enforced, Bench Billboard will have to remove its benches or face the penalties specified in the Code.  In other words, the Court does not have to speculate about the impact the ordinance will have on Bench Billboard.  Bench Billboard seeks damages, injunctive, and declaratory relief.  A favorable decision from this Court on Bench Billboard's claims would thus address the alleged injury.

*Prime Media, Inc. v. City of Brentwood*, 485 F.3d 343 (6th Cir. 2007), does not require a dismissal of this action as the City suggests.  In *Prime Media*, the Sixth Circuit found that the plaintiff did not have standing to pursue its claim that the defendant city's sign regulations were unconstitutionally overbroad.  *Id*. at 350.  Bench Billboard is not making an overbreadth claim in this case.  Rather, it is challenging the City's revocation of its special street privilege and the constitutionality of an ordinance that expressly covers Bench Billboard benches currently in place at hundreds of locations throughout the city.  Bench Billboard has thus demonstrated an injury in fact traceable to the City's actions.[2]  Because Bench Billboard has demonstrated that it has standing to bring this action, dismissal for lack of jurisdiction is not warranted.

---

[1]  On March 14, 2008, the City issued a letter to Bench Billboard ordering it to remove within thirty days all benches that do not conform with the conditions of the revised ordinance.

[2]  The plaintiff in *Prime Media* established standing for its challenge to the size and height requirements of the Brentwood sign ordinance but lost that challenge on its merits.  *Prime Media, Inc.*, 485 F.3d at 348.

7

### B.     Indispensable Party

The City of Cincinnati also moves for dismissal of the Complaint on grounds that it fails to name an indispensable party, namely, SORTA.[3]  The City argues that the Court's disposition of this action may impair SORTA's ability to protect its interests within the meaning of Rule 19, thus requiring dismissal.

The City's argument is not persuasive.  Before an action is subject to dismissal because of a plaintiff's failure to join an indispensable party, the court must determine that the absent party is a "required party" as that term is explained in Civil Rule 19(a)(1) and, further, that the party cannot feasibly be joined.  If joinder of a required party is not feasible, the court must then consider the factors set out in Rule 19(b) to determine whether the action should proceed among existing parties or be dismissed.[4]

The Court need not determine whether joining SORTA is feasible because, under the criteria set out in Rule 19(a)(1), SORTA is not a required party.  A person should be joined in an action if:

> (A) in that person's absence, the court cannot accord complete
> relief among existing parties; or

---

[3]  The City originally argued that Matt Painter, the owner of another advertising bench company that places advertising benches in Cincinnati, also was an indispensable party. However, the City abandoned this argument in its reply memorandum, stating: "BBC's concession that it now agrees to the same regulatory limitations as Matt Painter and other advertising bench vendors eliminates the need to join Painter as an indispensable party."  (Doc. 26 at 4.)

[4]  The City admits that "[i]t is feasible to join SORTA."  (Doc. 24 at 7.)  Thus, dismissal under Rule 19 would not be appropriate even if SORTA was a necessary party.

8

> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
>> (i) as a practical matter impair or impede the person's ability to protect the interest; or
>>
>> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1). Bench Billboard claims that the City is violating its constitutional rights and violated a settlement agreement between them. These claims are resolvable among the existing parties and complete relief does not depend on SORTA. Thus, SORTA is not a required party under Rule 19(a)(1)(A). Neither does SORTA have an interest in the 1996 settlement agreement or the City's current advertising bench regulations. Although the City argues that SORTA's operations might be materially affected by this Court's ruling on the merits of this case, this is pure speculation. Given that SORTA is not subject to either the settlement agreement or the ordinance in dispute, SORTA need not be a party to this action to protect any interest it may have in maintaining its bus shelters in the public right of way. Finally, the City does not argue that it will be subject to multiple or inconsistent obligations if SORTA is not joined. Accordingly, SORTA is not a required party to this lawsuit, and dismissal under Rule 19 is not warranted.

### C. Failure to State a Claim

The City urges dismissal of the action on grounds that the Complaint fails to state a plausible claim that the Municipal Code deprives Bench Billboard of any speech rights, any right to equal protection, or any right to substantive due process. Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss a complaint for failure to state a claim upon which

relief can be granted. Fed. R. Civ. P. 12(b)(6). In reviewing a motion to dismiss pursuant to Rule 12(b)(6), a court "must construe the complaint in the light most favorable to plaintiffs [and] accept all well-pled factual allegations as true." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007). Since the Supreme Court's decision in *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007), the Sixth Circuit has explained that "a plaintiff's allegations, while 'assumed to be true, must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief.'" *B. & V. Distrib. Co., Inc. v. Dottore Co., LLC.*, No. 06-3839 (6th Cir. May 15, 2008) (quoting *Bredesen*, 500 F.3d at 527). "'To state a valid claim, a complaint must contain either direct or inferential allegations respecting all the material elements to sustain recovery under some viable legal theory.'" *Id*. (quoting *Bredesen*, 500 F.3d at 527).

### 1.    First Amendment Speech Rights

The City asserts that Bench Billboard has no plausible First Amendment claims because there is no First Amendment right to leave private structures on public property. By reducing the subject of Plaintiff's Complaint to the cement and wood structure and ignoring the message-conveying medium of the billboard, the City is defining the "activity" protected by the First Amendment by the time, place, or (in this case) manner by which the activity is exercised. The United States Supreme Court discussed the error of such an approach in *City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750 (1988). There, the dissent sought to define the activity by the newsrack structure when, in fact, "the actual 'activity' at issue [was] the circulation of newspapers, which is constitutionally protected." *Id*. at 768. The actual "activity" in this case is the display of advertising on a billboard, which is constitutionally protected.

10

The Sixth Circuit has also rejected the City's argument that there is no First Amendment right to leave a private structure on public property. *Chabad of S. Ohio & Congregation Lubavitch v. City of Cincinnati*, 363 F.3d 427, 433-34 (6th Cir. 2004) (holding that the plaintiff had a First Amendment right to erect a menorah on Fountain Square during the holiday season). In *Chabad*, the Sixth Circuit explained that whether there is a First Amendment right to leave private structures on public property "depends upon the property and the government's regulation of that property." *Id*. at 434. The City attempts to avoid the application of *Chabad* to this case by noting that *Chabad* was a content-based, noncommercial speech case and this is a content-neutral, commercial speech case. However, a plain reading of the standard set out in *Chabad* shows that the existence of a First Amendment right to leave private structures on public property depends *on the property* and *the government's regulation of that property*. In *Chabad*, the property was Fountain Square, a traditional public forum. In this case, the property is a public sidewalk, also a traditional public forum. In *Chabad*, the City regulated the property with an ordinance that authorized the use of structures on Fountain Square with a permit. In this case, the City authorizes the erection of advertising benches (and many other structures bearing advertising) on the public sidewalks with a street privilege. Thus, just as in *Chabad*, Bench Billboard has a First Amendment protected right to leave its benches on the City's sidewalks, limited only by reasonable, content-neutral time, place, and manner restrictions. *See id*. at 434.[5]

---

[5] Because the ordinance at issue in *Chabad* was content-based, it was subject to strict scrutiny. *Chabad*, 363 F.3d at 434 ("The level of scrutiny applied to restrictions on speech in a traditional public forum depends on whether the regulation is content based or content neutral."). In this case, the ordinance is content-neutral and thus must be narrowly tailored to serve a significant governmental interest, and the City must leave open ample alternative channels for communication of the information. *Prime Media, Inc. v. City of Brentwood, Tenn*., 398 F.3d 814, 818 (6th Cir. 2005).

Prior to the *Chabad* decision, the Sixth Circuit had recognized that the display of an object such as a menorah was expressive activity for purposes of the First Amendment. *See Lubavitch II*, 997 F.2d 1160, 1164 (6th Cir. 1993) (citing *Texas v. Johnson*, 491 U.S. 397 (1989)). In this respect, the present matter differs from *Chabad* because neither the Supreme Court nor the Sixth Circuit Court of Appeals has expressly considered whether erecting a bench billboard is expressive activity. However, it is beyond dispute that billboards are a medium of speech that are protected by the First Amendment. *Prime Media, Inc. v. City of Brentwood, Tenn.*, 398 F.3d 814, 818 (6th Cir. 2005) ("Billboards and other visual signs, it is clear, represent a medium of expression that the Free Speech Clause has long protected.") While bench billboards, like all billboards, "'pose distinctive problems' . . . because [they] 'take up space and may obstruct views, distract motorists, displace alternative uses for land, and pose other problems that legitimately call for regulation,'" they are still entitled to the protections of the First Amendment. *Id*. (quoting *City of Ladue v. Gilleo*, 512 U.S. 43, 48 (1994)).

Furthermore, bench billboards are analogous to newsracks in that they are both structures commonly associated with expression and are generally permanently affixed to sidewalks. Newsracks have been afforded First Amendment protection. *City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750 (1988). Thus, while "[c]ourts have generally refused to protect on First Amendment grounds the placement of objects on public property where the objects are permanent or otherwise not easily removed," (*Tucker v. City of Fairfield, Ohio*, 398 F.3d 457, 462 (6th Cir. 2005)), the advertising benches at issue are sufficiently analogous to newsracks that they are entitled to similar protection, particularly when the City has opened its public right of ways to numerous other structures conveying advertising messages.

12

Because billboards–bench or otherwise–are commonly associated with expression and the City has otherwise opened the public right of way to structures bearing expressive communication, the Court finds that Bench Billboard has alleged facts sufficient to state valid First Amendment claims. The Court now addresses separately each of Bench Billboard's three First Amendment claims.

### a. Unbridled Discretion

The City, relying on *City of Lakewood*, argues that Bench Billboard can not state a First Amendment claim alleging "unbridled discretion" because that principle only applies to the regulation of noncommercial speech, not commercial speech which is the issue here. However, the Supreme Court in *City of Lakewood* made no distinction between commercial and noncommercial speech when discussing unbridled discretion/prior restraint principles. 486 U.S. at 756. The "unbridled discretion" principle may be used to bring a facial challenge to regulations pertaining to their advertising benches, as the District Court for the Western District of Kentucky recently recognized. *See Bench Billboard Company v. Louisville-Jefferson County Metro-Government*, 2006 WL 1895507, No. 3:05-CV-172-H (W.D. Ky. July 6, 2006) (denying the government's motion to dismiss Bench Billboard's First Amendment claim alleging "unbridled discretion" on the part of the Works Director). In *Bench Billboard*, the court found that a facial challenge to Louisville Metro Code of Ordinance was appropriate for two reasons: the lack of standards and lack of definitions for the terms "structure" and "object." *Id.* at *2.

Bench Billboard's Complaint alleges that C.M.C. § 723-20, which gives "[t]he City Manager or his designee . . . the authority to modify or waive any of the requirements of this section when required for public safety," gives the city manager unbridled discretion over

13

whether to permit or deny expressive activity in the form of an advertising bench. The ordinance does not provide rules or standards to govern the city manager's decision as to what is "required for public safety." It is plausible that, even if an advertising bench met all the criteria set forth in C.M.C. § 723-20(b), the city manager could deny a street privilege to the applicant by modifying the section's requirements. The Complaint therefore contains allegations respecting all the material elements necessary to sustain recovery under a facial challenge to C.M.C. § 723-20.

### b. Prior Restraint

The City claims that, just as "unbridled discretion" principles do not apply to commercial speech, neither does the principle of "prior restraint." The City is incorrect that these principles do not apply to the regulation of commercial speech. The concepts of unbridled discretion and prior restraint are two sides of the same coin: "[A] licensing statute placing unbridled discretion in the hands of a government official or agency constitutes a prior restraint and may result in censorship." *City of Lakewood*, 486 U.S. at 757. Thus, Bench Billboard's First Amendment claim alleging that C.M.C. § 723-20 grants the government unbridled discretion duplicates its claim alleging that § 723-20 constitutes an unlawful prior restraint. Bench Billboard has adequately stated a facial challenge to the ordinance. However, it need not set forth separate claims for relief alleging unbridled discretion and prior restraint. Accordingly, the Court dismisses Count Two of the Complaint as duplicative of Count One.

### c.  *"Reasonable Fit"*

The City argues that, because Bench Billboard does not have a First Amendment right to place its benches in the public right of way, there need not be a "reasonable fit" between the City's safety and aesthetic interests and the means used to further those interests.  It asserts that the "reasonable fit" standard of review is only appropriate when a court is analyzing a content-based speech restriction, citing *City of Cincinnati v. Discovery Network*, 507 U.S. 410 (1993).

Bench Billboard's Third Claim for Relief recites the four-part analysis for determining the constitutional validity of a government's regulation of commercial speech: (1) the speech must concern lawful activity and not be misleading, (2) the asserted governmental interest must be substantial, (3) the regulation must directly advance the governmental interest asserted, and (4) the regulation must not be more extensive than is necessary to serve that interest.  *Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 566 (1980).  The City's regulation of the time, place, or manner of protected speech must be narrowly tailored to serve the government's legitimate, content-neutral interests.  *Prime Media*, 398 F.2d at 819.   The *Central Hudson* test and the test for analyzing time, place, and manner restrictions are substantially similar; under either test, the City's regulation of the bench advertising must be tailored to the government's interest.  *Id*. at 824 ("[T]he commercial-speech tailoring requirement–a reasonable fit between the legislature's ends and the means chosen to accomplish those ends,–is a close cousin, if not a fraternal twin, of the [time, place, and manner] test that we have applied here.").  Furthermore, the same level of scrutiny–intermediate level–applies to both content-neutral regulations and restrictions on commercial speech.  *Pagan v. Fruchey*, 492 F.3d 766, 778 (6th Cir. 2007).

Bench Billboard's Complaint alleges that the City's governmental interest in the restrictions placed on advertising benches in the right of way and on private property is not substantial due, in part, to the fact that the City allows, virtually unregulated, many other forms of advertising on its right of ways and private property, and that the restrictions in C.M.C. § 723-20 and Chapter 895 are more extensive than necessary to serve any governmental interest.  These allegations address the material elements necessary to sustain recovery under a claim that C.M.C. § 723-20 and Chapter 895 are not appropriately tailored to serve the government's interests.

### 2.        Equal Protection

The City seeks dismissal of Bench Billboard's equal protection claim on two grounds: that Bench Billboard is not similarly situated to SORTA and that even if they were similarly situated that the City has a rational basis for permitting bus shelters in the public right of way under different conditions than it allows advertising benches.  The Equal Protection Clause prohibits discrimination by government that "either burdens a fundamental right, targets a suspect class, or intentionally treats one different than others similarly situated without any rational basis for the difference." *TriHealth, Inc. v. Bd. of Comm'rs, Hamilton County, Ohio*, 430 F.3d 783, 788 (6th Cir. 2005) (citing *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 312 (6th Cir. 2005)).  Under the latter "class of one" theory, the plaintiff may demonstrate that government action lacks a rational basis either by negating every conceivable basis that might support the government action or by showing that the challenged action was motivated by animus or ill-will.  *Id*. (citing *Warren v. City of Athens, Ohio*, 411 F.3d 697, 710-11 (6th Cir. 2005)).

16

Bench Billboard alleges that both advertising bus shelters and Bench Billboard's benches display commercial advertisements. Both are placed on the public right of way and on private property and serve the interests of the public waiting at bus stops. Advertising bus shelters are approximately two and a half times taller than benches and occupy over three times as much square feet of space, and contain illuminated advertising. The Complaint alleges that the City has granted street privileges to private advertising bus shelter companies but has repealed street privileges for advertising benches, subjecting Bench Billboard to numerous and overly burdensome restrictions contained in § 723-20 and Chapter 895 of the Code. Additionally, trash receptacles, street banners, banners, kiosks, and sandwich boards containing commercial advertisements are virtually unregulated and newsracks are totally unregulated. The Complaint alleges that the above facts demonstrate that the City is intentionally and unlawfully discriminating against Bench Billboard and there is no rational basis for doing so.

Under the "decidedly liberal" standard of Rule 12(b)(6), (*League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007)), taking Plaintiff's allegations as true, the Complaint contains allegations respecting all elements to sustain recovery under an equal protection claim under the "class of one" theory.[6]

---

[6] The District Court in *Bench Billboard Company v. Louisville-Jefferson County Metro-Government* dismissed Bench Billboard's equal protection claim after finding that the defendant "could have numerous rational reasons for denying BBC's permit to place concrete benches on its rights-of-way, including its stated reason of safety and aesthetics, considerations of which implicate substantial government interests." 2006 WL 1895507 at *3. The City argues that this Court must reach the same conclusion here.

While the City of Cincinnati may, in fact, have reasons for treating Bench Billboard differently from others that are similarly situated, the Complaint alleges facts that either negate the City's bases for different treatment or demonstrate animus, such as the comment by Councilperson Bortz at the time of the amendment of § 723.20 that "[t]here has been very little control over what goes on the benches and where they are. *My intention is to remove the*

17

### 3.      Substantive Due Process

The City argues that because Bench Billboard's claims are covered under other, particularized constitutional provisions, the more generalized notion of substantive due process is an inappropriate guide for considering the claims.  Additionally, the City states that, as a matter of law, its regulation of advertising benches cannot rise to level of an action that "shocks the conscience" as is required to violate substantive due process principles.  Bench Billboard responds that it had a constitutionally protected property interest in the rights granted to it under the street privilege, the City's revocation of the street privilege was not rationally related to legitimate state concerns, and whether the City's actions "shock the conscience" is a question of fact.

The concept of substantive due process, arising out of the Fourteenth Amendment, acknowledges that "governmental deprivations of life, liberty or property are subject to limitations regardless of the adequacy of the procedures employed."  *Bowers v. City of Flint*, 325 F.3d 758, 763 (6th Cir. 2003) (quoting *Pearson v. City of Grand Blanc*, 961 F.2d 1211, 1216 (6th Cir. 1992) (citation omitted)).  "These limitations are meant to provide 'heightened protection against government interference with certain fundamental rights and liberty interests.'"  *Does v. Munoz*, 507 F.3d 961, 964 (6th Cir. 2007) (quoting *Seal v. Morgan*, 229 F.3d 567, 574 (6th Cir. 2000)).  "However, identifying a new fundamental right subject to the protections of substantive due process is often an 'uphill battle,'" . . . as the list of fundamental

---

*advertising benches*."  (Doc. 22 ¶ 52 (emphasis added).)  In contrast, the City is not exercising control over what goes on the bus shelters and has granted SORTA street privileges allowing it to erect and maintain the shelters notwithstanding otherwise applicable Code sections.  Thus, the Complaint alleges facts that, if true, might demonstrate that the City lacks a rational basis for treating Bench Billboard differently from similarly situated individuals.

18

rights 'is short.'" *Id*. (internal citations omitted). To qualify as a fundamental right, the claimed right must be "deeply rooted in this Nation's history and tradition" or "implicit in the concept of ordered liberty," such that "neither liberty nor justice would exist if they were sacrificed. . . .". *Id*. (quoting *Moore v. City of East Cleveland*, 431 U.S. 494, 503 (1977); *Washington v. Glucksberg*, 521 U.S. 702, 721 (1997)).

Bench Billboard has not adequately alleged the deprivation of a fundamental right in this matter. It has not cited any legal authority for the proposition that a special street license granted as part of the settlement of a lawsuit against a municipality is a right that is either deeply rooted in the Nation's history nor implicit in the concept of ordered liberty.[7] Furthermore, before a deprivation of a fundamental right can constitute a violation of substantive due process, the government action must be so arbitrary that it "shocks the conscience." *County of Sacramento v. Lewis*, 523 U.S. 833, 847 (1998). Although Plaintiff alleges that the City's act of revoking its special street privilege "was to cripple and/or destroy BBC's business," doc. 22 ¶ 96, this falls far short of the type of governmental action that shocks the conscious. *See*, *e.g.*, *Breithaupt v. Abram*, 352 U.S. 432, 435 (1957) (reiterating that conduct that "'shocked the conscience' and was so 'brutal' and 'offensive' that it did not comport with traditional ideas of fair play and decency" would violate substantive due process).

The Supreme Court has previously made clear that "[w]here a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of

---

[7] Plaintiff cites *Turner v. City of Inglewood*, 195 Fed. App'x 346, 2006 WL 2329375 (6th Cir. Aug. 10, 2006) for the proposition that citizens have a substantive due process right not to be subjected to arbitrary or irrational zoning decisions. (Doc. 25 at 14.) However, *Turner* is inapplicable because Bench Billboard's substantive due process claim arises out of the revocation of a street privilege, not a zoning regulation. See doc. 22 ¶¶ 89-97.

government behavior, 'that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims.'" *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)); *see also Montgomery v. Carter County, Tennessee*, 226 F.3d 758, 769 (6th Cir. 2000).  To the extent that there are allegations in Plaintiff's Fifth Claim implicating First Amendment violations, those allegations must be analyzed under that Amendment and not under the notion of substantive due process. Accordingly, the Court grants the City's motion to dismiss Bench Billboard's substantive due process claim (Fifth Claim).

### D.    Jurisdiction Over State Law Claim: Breach of Settlement Agreement

Having found that the Complaint states federal claims over which the Court has jurisdiction, the Court accepts jurisdiction over Bench Billboard's pendent state-law claim for breach of the 1996 Settlement Agreement.[8]  However, the Complaint does not state a viable claim for breach of the Agreement, and the Seventh Claim for Relief must be dismissed.

Pursuant to the 1996 Agreement, the City passed Emergency Ordinance No. 187-1996, which granted a special revocable street privilege to Bench Billboard in order to assure that it was treated equally with those companies placing and/or maintaining bus shelters on the right of way, and passed Emergency Ordinance No. 186-1996, which exempted advertising benches from certain restrictions contained in Chapter 895 of the Code to assure that Bench Billboard was treated equally with those companies placing and maintaining advertising bus shelters on the

---

[8]  The Court takes judicial notice of the Settlement Agreement, doc. 24-2, which is identified in the Complaint and is attached to the City's motion to dismiss.  The Court may take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment.  *Kostrzewa v. City of Troy*, 247 F.3d 633, 644 (6th Cir. 2001).

20

public right of way and private property.  However, the Agreement also provided that "[b]oth parties hereby acknowledge that this Agreement shall not in any way preclude or prevent the City of Cincinnati from enacting legislation subsequent to the execution hereof which may modify, in whole or in part, the ordinances attached hereto."  (Doc. 24-2 ¶ 8.)

The Complaint alleges that by Ordinance No. 226-2007, the City essentially undid all of the changes made by Ordinance No. 186-1996 and that Ordinance Nos. 220-2006, 225-2007, and 320-2007 undid all the changes made by Ordinance No. 187-1996.  The City's right to do just that was explicit in the Settlement Agreement.  Accordingly, the Complaint fails to state facts sufficient to allow it to recover under its claim for breach of the 1996 Agreement.

## III.    CONCLUSION

For the foregoing reasons, Defendant the City of Cincinnati's motion to dismiss (doc. 24) is **GRANTED IN PART** and **DENIED IN PART**.  The Second, Fifth, Sixth, and Seventh Claims of the Amended and Supplemental Complaint are dismissed with prejudice.  The matter shall proceed on Plaintiff's remaining claims.

IT IS SO ORDERED.


         s/Susan J. Dlott_____
         Susan J. Dlott
         United States District Judge