IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **BENCH BILLBOARD COMPANY**, | : | Case No. 1:07cv589 |
| | : | |
| Plaintiff, | : | Chief Judge Susan J. Dlott |
| | : | |
| v. | : | ORDER GRANTING IN PART |
| | : | DEFENDANT'S MOTION TO |
| **CITY OF CINCINNATI**, | : | DISMISS, DENYING PLAINTIFF'S |
| | : | MOTION FOR SUMMARY |
| Defendant. | : | JUDGMENT, AND GRANTING |
| | : | DEFENDANT'S MOTION FOR |
| | : | SUMMARY JUDGMENT |

Before the Court is Defendant City of Cincinnati's Motion to Dismiss on the Ground of

Mootness (doc. 100).[1]  Also pending are the City of Cincinnati's Motion for Summary Judgment

(doc. 87), Plaintiff's Motion for Summary Judgment on the Issue of Liability Only (doc. 86), and

the City of Cincinnati's Motion to Strike Affidavits (doc. 98).  For the reasons that follow, the

Court **GRANTS IN PART** the City's Motion to Dismiss on the Grounds of Mootness, **DENIES**

Plaintiff Bench Billboard Company's Motion for Summary Judgment, **DENIES** the City's

Motion to Strike, and **GRANTS** the City's Motion for Summary Judgment on the remaining

claims.

---

[1]  Plaintiff moved for leave to file a sur-reply to Defendant's motion and attached to that
motion a memorandum constituting its sur-reply argument.  (Doc. 107.)  Defendant does not
object to the Court's consideration of Plaintiff's sur-reply argument.  (*See* doc. 108.)  The Court
therefore GRANTS Plaintiff's motion for leave to file a sur-reply (doc. 107) and has considered
the argument set forth in that document in reaching the opinion set forth in this order.

## I. BACKGROUND

This case involves the constitutionality of a municipality's regulations concerning advertising benches.  The Plaintiff, Bench Billboard Company ("Bench Billboard"), claims that the City of Cincinnati's laws regulating the placement of advertising benches on public and private property violate the First and Fourteenth Amendments of the United States Constitution as well as state law.  The City denies these claims.

Bench Billboard is in the business of advertising products and services on the backrests of benches that it installs on both public and private property.  The advertising benches are typically located near bus stops to be used in conjunction with public bus transportation.  The benches are approximately two feet wide, six feet long, and forty-two inches tall.  The backrest that forms the advertisement space is two feet high by six feet wide, resulting in twelve feet of advertising space.  In the past, Bench Billboard has placed at least 722 commercial advertising benches in the right-of-way in the City of Cincinnati.

### A.  1993 Lawsuit and 1996 Settlement Agreement

The City of Cincinnati and Bench Billboard have for years been embroiled in a dispute over the City's attempts to regulate advertising benches.  In 1993, Bench Billboard sued the City, challenging the legality of its ordinances limiting Bench Billboard's ability to place its advertising benches in the public right-of-way and on private property.  *Bench Billboard Co. v. City of Cincinnati*, Case No. 1:93-cv-711, S.D. Ohio (Spiegel, J.).  In that action, Bench Billboard claimed that the City confiscated more than 200 of its advertising benches without due process and unlawfully refused to grant permits to Bench Billboard to place advertising benches

2

on public and private property. Bench Billboard also argued that the City's ordinances granted preferential right-of-way access to bus stop shelters that contained advertising panels.

Bench Billboard and the City settled that dispute in 1996. As part of the settlement, the City granted Bench Billboard replacement permits to place benches on private property. The City also passed Ordinance No. 187-1996, which granted Bench Billboard "Special Street Privileges for the placement of benches and the placing of advertising thereon . . . notwithstanding any provisions of the Cincinnati Municipal Code relating to posting of advertising signs or placement of benches on public property or public rights of way." (Ord. No. 187-1996, filed as Jamison Dep. Ex. 47.)[2] Ordinance No. 187-1996 exempted Bench Billboard from Chapters 718 ("Revocable Street Privileges"), 723 ("Streets and Sidewalks, Use Regulations"), and 895 ("Outdoor Advertising Signs") of the Cincinnati Municipal Code. (*Id.* § 2.) The Ordinance also allowed Bench Billboard to place one advertising bench at bus stops in the public right-of-way where a bus stop shelter or other seating structure had been placed and two advertising benches at bus stop locations where no other seating was provided. (*Id.* § 5.) The special street privilege granted to Bench Billboard was expressly revocable by the City. (*Id.* § 14.)

According to then Cincinnati City Solicitor Fay Dupuis, the special street privilege was intended to address "Bench Billboard's claims that the City [wa]s violating equal protection requirements by its grant of right-of-way space to bus stop shelters and refusal to accord equal

---

[2] The transcript of the deposition of Timothy M. Jamison, Acting City Engineer, is filed as doc. 82.

treatment to advertising benches." (Bortz Dep. Ex. 8.)[3] Ms. Dupuis advised City Counsel that the changes being made to the City ordinances did "not address all weaknesses inherent in the existing statutory scheme" and suggested that "[i]n order to minimize the City's potential exposure to such challenges, the City should develop a coordinated approach for permitted uses on the City right-of-way which establishes priorities for uses which are in the best interest of the public and assure equal treatment for similarly situated entities." (*Id.*) Following the 1996 settlement, Bench Billboard placed its benches on both public and private property within the City on the terms specified in Ordinance No. 187-1996.

Approximately ten years later, in August 2006, the City repealed Ordinance No. 187-1996. (*See* Ordinance No. 223-2007.) The consequence of the repeal was that Bench Billboard lost its revocable street privilege and again became subject to provisions of the Cincinnati Municipal Code relating to posting of advertising signs or placement of benches on public property or public right-of-way. Specifically, the company had to adhere to the provisions of Municipal Code § 723-20 ("Advertising Benches in the Public Right-of-Way"), which has since been repealed but at that time pertained to the placement of advertising benches on public sidewalks. Under § 723-20, Bench Billboard was limited to the placement of only one advertising bench at a bus stop and no benches at stops already served by an existing bus shelter or bench. Bench Billboard also became subject to Municipal Code Chapter 895, which primarily

---

[3] The transcript of the deposition of Chris Bortz, Cincinnati City Councilmember and chairman of the Cincinnati City Council's Economic Development Committee, is filed as doc. 79. In his capacity as a councilmember, Mr. Bortz spearheaded efforts to eliminate advertising benches in the right-of-way. (Bortz Dep. at 48-49.)

addresses off-site advertising on private property. Chapter 895 includes specifications and placement limitations for outdoor signs such as large billboards. (Lyons Dep. at 15.)[4]

Prior to taking any action to enforce any of the Municipal Code provisions as to Bench Billboard, in June 2007, the City amended § 723-20 and Chapter 895 of the Code. Amendments to § 723-20 included limiting the advertising space on bench billboards to eleven square feet in area[5] and giving the City Manager "the authority to modify or waive any of the requirements of this Section when required for public safety." (Am. Compl. ¶ 53.)[6] In comparison, the City continued to allow newsracks, street banners, and sandwich board advertising signs to remain on the public right-of-way without substantial regulation.[7]

Bus shelter signs also remained largely exempt from City regulation. Public bus service in Hamilton County, Ohio is provided by a public agency named SORTA. Since 1979, SORTA has contracted with a third-party advertising firm to erect bus shelters at certain bus stops and to sell and display advertising on them. (Reynolds Dep. Ex. 3.)[8] In 1995, the City of Cincinnati

---

[4] The transcript of the deposition of Reginold Lyons, supervisor of zoning administration for the City of Cincinnati's Building and Inspections Division of the Department of Planning and Buildings, is filed as doc. 88. Lyons is responsible for administering Chapter 895, Outdoor Advertising Signs, of the Cincinnati Municipal Code. (Lyons Dep. at 10, 14.)

[5] The advertising area on the backrest of Bench Billboard benches, and all standard advertising benches, is twelve square feet.

[6] The Amended Complaint is filed as doc. 22.

[7] On November 28, 2007, after the filing of this lawsuit, the City again amended § 723-20 to, among other things, create a lottery system for the placement of advertising benches and authorizing the City Manager "to promulgate additional regulations necessary to effectuate the purposes of this chapter." (Am. Compl. ¶ 60.)

[8] The transcript of the deposition of Timothy Reynolds, SORTA's Director of Transit Development, is filed as doc. 84.

granted revokable street privileges to the advertising firm under contract with SORTA; those privileges allow it to maintain existing and construct new advertising bus shelters on the right-of-way notwithstanding Chapter 895 of the Municipal Code.[9] (Ord. No. 283-1995, attached to Jamison Dep. as Ex. 43.) That revocable street privilege has been assigned to Lamar Advertising Company. Presently, Lamar owns and maintains ninety bus shelters in SORTA's service area. (Reynolds Dep. at 7.) SORTA derives about $68,000 a year from Lamar's operation of the ninety shelters. (*Id.* at 8.) If SORTA operated and maintained the bus shelters, the approximate capital cost to SORTA would be $700,000 and the annual maintenance and repair cost to SORTA would be approximately $250,000. (*Id.*)

### B. The Instant Lawsuit

Bench Billboard initiated this suit on July 27, 2007 alleging that the City was violating its First and Fourteenth Amendment rights and had breached the 1996 settlement agreement. Bench Billboard sought declaratory judgment, injunctive relief, and damages. The City moved to dismiss Bench Billboard's complaint in its entirety. The Court granted in part the City's motion to dismiss after determining that Bench Billboard's Amended Complaint failed to state a claim for a violation of its substantive due process rights or breach of the settlement agreement. However, Bench Billboard sufficiently plead its First Amendment claim that § 723-20 was facially invalid because it granted the City Manager unbridled discretion (First Claim); its First Amendment claim that the restrictions in § 723-20 and Chapter 895 were more extensive than

---

[9] Under Cincinnati Municipal Code § 895-1-O, "[s]igns within a public right-of-way displayed pursuant to a revocable street privilege or an agreement with the city" are excluded from the definition of "outdoor advertising sign," thus the provisions of Chapter 895 regulating outdoor signs do not apply to signs placed within the right-of-way pursuant to a street privilege.

necessary to serve the City's interests (Third Claim); and its equal protection claim that the City

was intentionally and unlawfully discriminating against Bench Billboard (Fourth Claim).[10]

Approximately one week after the Court entered its Order concerning the City's motion

to dismiss, the City again amended § 723-20 by means of Ordinance No. 229-2008.  With that

Ordinance, the City increased the allowable area of advertising on the benches from eleven to

twelve square feet (which is what the statute allowed prior to the June 2007 amendment) and

deleted the language allegedly giving the City Manager unbridled discretion.  At no time did the

City enforce the provisions of § 723-20 that it later repealed, nor did the City remove any of

Bench Billboard's benches from either public or private property.  (Jamison Aff. ¶¶ 6-7.)[11]

Following a period of discovery, Bench Billboard filed a Motion for Summary Judgment

on the Issue of Liability Only.  In that motion, Bench Billboard asserts that it is entitled to

judgment in its favor on all its remaining claims.  Specifically, Bench Billboard claims that it is a

prevailing party on its first claim for relief (regarding the discretionary language included in

former § 723-20); that § 723-20 and Chapter 895 are unconstitutional because the restrictions

therein are more extensive than necessary to serve any governmental interest; and that the City

unlawfully discriminates against it by giving preferential treatment to advertising bus shelters,

banners, newsracks, and other advertising objects over advertising benches.  Bench Billboard

asserts that it is entitled to a declaratory judgment that the statutes are unconstitutional and that

its existing benches are lawful, non-conforming uses, and injunctive relief requiring the City to

---

[10]    Bench Billboard separately asserted its claims for declaratory judgment (Eighth Claim) and injunctive relief (Ninth Claim).

[11]  The Affidavit of Timothy Jamison is filed as doc. 87-4.

grant it a street privilege on terms at least as favorable as those contained in the special street privilege currently awarded to Lamar for its maintenance and placement of advertising bus shelters.

The City of Cincinnati also filed a motion for summary judgment.  In that motion, the City argues that Bench Billboard does not have standing to assert its First Amendment claims, that its challenge to the repealed subsection is moot, that there is no constitutional right to leave advertising benches in the public right-of-way, that the City's ordinances withstand constitutional scrutiny, and that Bench Billboard cannot prove its equal protection claim.

### C.  Ordinance 363-2009

Prior to the Court's resolution of the parties' motions for summary judgment, the City of Cincinnati passed Ordinance 363-2009.  (Doc. 100.)  With that ordinance, the City radically revised its legislation concerning structures in the public right-of-way.  The ordinance amends Municipal Code Chapters 723 ("Streets and Sidewalks, Use Regulations") and 718 ("Revocable Street Privileges") to institute a regulatory scheme that applies to park benches, planters, sandwich board signs, mail boxes, newsracks, bus stop shelters, outdoor dining areas, kiosks, sidewalk vending, and awnings with the intent of, among other things, "limit[ing] advertising on structures in order to reduce visual distraction and clutter so as to protect pedestrian and traffic safety as well as improv[ing] the aesthetic qualities of city business districts and neighborhoods" and "regulat[ing] the placement of structures within the rights-of-way in order to protect public safety and ensure adequate clearance for pedestrian traffic."  (*Id.* at 6.)  Under § 723-13 of the new statute, bus stop shelters will no longer be able to contain advertising beginning January 1, 2013.  (*Id.* at 21.)  The ordinance deletes § 723-20 and prohibits advertising benches altogether

8

on the public right- of-way.[12]  The ordinance does not amend Chapter 895 of the Municipal Code.

Following City Counsel's amendment of Chapter 723, the City moved to dismiss all Bench Billboard's claims in this case as moot.  (Doc. 100.)  Bench Billboard opposes the City's motion to dismiss; it claims that the City's modifications to Chapters 718 and 723 of the Municipal Code do not affect its claim that the prior versions were unconstitutional, and it claims that the new ordinance has no impact on its claim that Chapter 895 is unconstitutional.  Bench Billboard also asserts that the City's latest ordinance does not impact Bench Billboard's claim for a declaratory judgment that its benches constitute valid, non-conforming uses under the Code.

## II. ANALYSIS

### A. Mootness

The City asserts that the enactment of Ordinance No. 363-2009 moots all of Bench Billboard's remaining claims because a court may not consider the constitutionality nor enjoin the enforcement of a statute that is no longer in effect.  Bench Billboard counters with three arguments: (1) its claims involving actions or ordinances unaffected by the recent amendments cannot be mooted by the amendments, (2) its claims relating to the Municipal Code sections that have been amended are not moot because the City might again amend the ordinance to revert to the allegedly unconstitutional language, and (3) its claims for money damages are not mooted by the amendment of an allegedly unconstitutional ordinance.

---

[12]  Although Ordinance No. 363-2009 implements an outright ban of advertising bench billboards, Bench Billboard did not amend its complaint to challenge the new legislation.

9

"Article III of the Constitution confines the power of the federal courts to adjudication of 'cases' or 'controversies'. . . .  The mootness doctrine, a subset of the Article III justiciability requirements, demands a live case-or-controversy when a federal court decides a case." *Kentucky Right to Life, Inc. v. Terry*, 108 F.3d 637, 644 (6th Cir. 1997) (citations omitted).  The Court must determine whether a live case or controversy exists as to Bench Billboard's claims following the enactment of Ordinance No. 363-2009.

### 1. Municipal Code Chapter 895

The City makes no argument as to how or why Cincinnati City Council's enactment of Ordinance No. 363-2009, which rewrites Chapter 723 and eliminates former § 723-20, impacts Bench Billboard's claim that Chapter 895 of the Municipal Code violates its First Amendment rights.  Because the new ordinance does not alter any provision of Chapter 895, Bench Billboard's challenge to Chapter 895 is not mooted by the enactment of that ordinance.

### 2. Municipal Code Chapter 723

Unlike its challenge to Chapter 895, Bench Billboard's challenge to Chapter 723, specifically § 723-20, *is* impacted by the enactment of Ordinance No. 363-2009 because the ordinance deleted that section.  Under Sixth Circuit precedent, this deletion largely nullifies Plaintiff's challenge to that statute.  *See Kentucky Right to Life*, 108 F.3d at 644.[13]

In *Kentucky Right to Life*, the plaintiffs brought a First Amendment challenge to various sections of Kentucky's campaign finance law.  *Id.* at 640.  The district court entered summary

---

[13]  The deletion of § 723-20 does not entirely nullify Plaintiff's challenge to that section because Plaintiffs seek money damages attributable to the City's actions in regard to § 723-20. *Kentucky Right to Life* is not instructive as to whether the statutory deletion moots a money damages claim because the plaintiffs in that case did not make a claim for money damages.

judgment for the state, and the plaintiffs appealed.  *Id*. at 642.  During the pendency of the

appeal, the legislature amended the challenged statute.  The Sixth Circuit held that the statutory

amendments mooted the plaintiffs' statutory challenges to the extent those challenges were

"effectively nullified by the recent statutory amendments."[14]  *Id*. at 644.  The Sixth Circuit

rejected the plaintiffs' attempt to analogize their case to the Supreme Court case of *City of*

*Mesquite v. Aladdin's Castle*, 455 U.S. 283 (1982), in which the Court held that the city's repeal

of the ordinance did *not* moot the appeal because it "would not preclude [the city] from

reenacting precisely the same provision if the District Court's judgment were vacated."  *Id*. at

289.  The Sixth Circuit found *Aladdin's Castle* distinguishable because the city in that case had

announced its intention to reenact the unconstitutional ordinance if the case was dismissed as

moot.  *Kentucky Right to Life*, 108 F.3d at 645 (discussing *Aladdin's Castle*, 455 U.S. at 289-90).

*Aladdin's Castle*, the Sixth Circuit explained, was "an example of the 'voluntary cessation'

exception to the general rule that legislative repeal of a statute renders a case moot. . . .  Th[e

voluntary cessation] exception properly applies only when a recalcitrant legislature clearly

intends to reenact the challenged regulation."  *Id*.

--------

[14] While *Kentucky Right to Life* addressed whether revisions to a challenged statute
during the pendency of an appeal mooted claims concerning the statute's constitutionality, the
principles of Article III justiciability expressed in those cases are applicable to cases where
revisions to challenged statutes occur during the trial court's consideration of the matter.  *See*
*Brandywine, Inc. v. City of Richmond, Kentucky*, 359 F.3d 830, 835-36 (6th Cir. 2004)
(upholding the district court's conclusion that the plaintiff's claims for injunctive and declaratory
relief were rendered moot by the city's modification of the challenged development ordinance);
*see also McQueary v. Conway*, 634 F. Supp. 2d 821, 829-30 (E.D. Ky. 2009) (holding that the
legislature's amendment of legislation to delete the challenged provisions mooted the plaintiff's
claim for declaratory and injunctive relief when there was no indication that the legislature
would reenact the deleted provisions of the Act).

In *Brandywine, Inc. v. City of Richmond*, 359 F.3d 830 (6th Cir. 2004), the Sixth Circuit again held that a city's repeal of an allegedly unconstitutional provision of an ordinance mooted the plaintiffs' claims for declaratory and injunctive relief.  The court stated, "[w]e can neither declare unconstitutional nor enjoin the enforcement of a provision that is no longer in effect." *Id*. at 836.  Supporting the court's conclusion that the action was moot was the fact that the legislators did not express any intention to reenact the offending legislation, again distinguishing *Aladdin's Castle*.  The plaintiffs' claim for monetary damages, however, was not moot because, despite the amendment, the plaintiffs could seek damages for any losses caused by the enforcement of the challenged ordinance.[15]  *Id*.

A district court within the Sixth Circuit recently examined the circuit's precedent on the issue of mootness following a legislature's revision or repeal of a challenged ordinance.  *See McQueary v. Conway*, 634 F. Supp. 2d 821 (E.D. Ky. 2009).  In *McQueary*, a political activist charged that certain provisions of state law infringed upon his right to protest at funerals under the First and Fourteenth Amendments.  The district court granted the plaintiff's motion for a preliminary injunction; shortly thereafter, the legislature amended the act to delete the challenged provisions.  *Id*. at 822.  The plaintiff argued that the amendment did not moot its claim, citing *Friends of the Earth, Inc. v. Laidlaw Environmental Services*, 528 U.S. 167 (2000), for its holding that a citizen suitor's claim for civil penalties under the Clean Water Act did not

---

[15]  Although the *Brandywine* court determined that the plaintiffs' claim for money damages was not mooted by the amendment of the ordinance, the court dismissed the money damages claim for failure to state a claim upon which relief could be granted.  *Brandywine, Inc.*, 359 F.3d at 836.

become moot when, after the litigation commenced, the defendant came into compliance with its permit. *McQueary*, 634 F. Supp. 2d at 827 (citing *Friends of the Earth*, 528 U.S. at 173-74).

The *McQueary* court distinguished *Friends of the Earth* because the defendant in that case was a private party who was charged with not complying with the terms of its permit. The defendant's voluntary cessation of the practice in question did not deprive the court of jurisdiction in that case because there was nothing to prevent the defendant from resuming the challenged practice. Cases against the government (like *Kentucky Right to Life*, *Brandywine*, and the instant matter) are unlike *Friends of the Earth* because "'cessation of the allegedly illegal conduct by government officials has been treated with more solicitude by the court than similar actions by private parties . . . such self-correction provides a secure foundation for mootness so long as it appears genuine.'" *McQueary*, 634 F. Supp. 2d at 828 (quoting *Mosley v. Hairston,* 920 F.2d 409, 415 (6th Cir. 1990)). Because the matter before it concerned the actions of a governmental body and not a private party, and because there was no indication that the legislature would reenact the deleted provisions of the act after the case was dismissed, the district court in *McQueary* held that the plaintiff's claims for declaratory and injunctive relief as to the deleted provisions were moot.[16] *Id.* at 830.

There are substantial similarities between this case and *McQueary*; as in that case, *Kentucky Right to Life* and *Brandywine* dictate the result here. When Cincinnati City Counsel enacted Ordinance No. 363-2009, thereby rewriting Chapter 723 of the Municipal Code and

---

[16] The plaintiff in *McQueary* did not seek monetary damages. The district court suggested that if the plaintiff had sought money damages, that claim would not have been mooted by the legislature's deletion of the challenged sections of the act. 634 F. Supp. 2d at 830 (discussing *Akers v. McGinnis*, 352 F.3d 1030 (6th Cir. 2003)).

establishing comprehensive legislation regulating structures in the public right-of-way, it mooted Bench Billboard's claims for injunctive and declaratory relief as to the former version of § 723-20. The ordinance enacted on December 16, 2009 was many years in the making. The process began in September 2006 when five City Council members made a motion asking the administration to review the public right-of-way management policies and recommend to council possible guidelines and appropriate uses of sidewalk space in the right-of-way. (Bortz Dep. at 190.) The ordinance is the result of that process. The legislative findings of Ordinance No. 363-2009 specify that the council's intent is "to provide a framework for private uses of the public rights-of-way within the City of Cincinnati" and that "this ordinance is intended to provide the procedures and standards governing a variety of private uses of the city sidewalks and other public right-of-way spaces." (Doc. 100 at 5.) Indeed, the ordinance sets forth the City's policies with regard to all the various types of structures placed within the right-of-way: park benches, planters, sandwich board signs, mail boxes, newsracks, retail sidewalk displays, bus stop shelters, informational kiosks, sidewalk vending, and awnings. (*Id.* at 6-7.) There is no evidence that the City intends to revert back to the language in § 723-20 that Bench Billboard challenged in its complaint. In fact, by virtue of the new ordinance, bench billboards are prohibited altogether from the right-of-way.

Because there is no basis for a belief that the City will revert to the now defunct statutory language challenged by Bench Billboard, and because "self-correction [by a government body] provides a secure foundation for mootness so long as it appears genuine" (*McQueary*, 634 F. Supp. 2d at 828), the Court concludes that Bench Billboard's claims for injunctive and declaratory relief (Claims Eight and Nine) with respect to § 723-20 are moot.

Remaining for disposition on their merits, then, are Bench Billboard's claim for money damages related to the City's enactment and enforcement of repealed § 723-20, its claim that Chapter 895 violates the First Amendment on its face and as applied, and its claim that the City gives preferential treatment to other forms of advertising in the right-of-way, violating Bench Billboard's right to equal protection.  The City has moved for summary judgment on these remaining claims, and Bench Billboard has moved for summary judgment on the issue of liability only.  As there are no disputes as to material facts in this case, the Court's decision on these motions will resolve the case.

### B.  Cross Motions for Summary Judgment

As a preliminary matter, the Court denies the City's motion to strike the affidavits of Bruce Graumlich and Eric Holzapfel filed by Plaintiff as attachments to its Reply Memorandum in Support of its Motion for Summary Judgment (doc. 96).  The arguments made by the City in support of its motion to strike — that Holzapfel's affidavit improperly introduced and then mischaracterized City documents and that Graumlich's affidavit conflicts with his deposition testimony, are without merit.

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c).  On a motion for summary judgment, the movant has the burden of showing that no genuine issues of material fact are in dispute, and the evidence, together with all inferences that can permissibly be drawn therefrom, must be read in the light most favorable to the party opposing the motion.  *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87 (1986).  The moving party may support the motion for summary judgment with affidavits or other proof or by

exposing the lack of evidence on an issue for which the nonmoving party will bear the burden of proof at trial.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

In responding to a summary judgment motion, the nonmoving party may not rest upon the pleadings but must go beyond the pleadings and "present affirmative evidence in order to defeat a properly supported motion for summary judgment."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).  The nonmoving party "must set forth specific facts showing there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).  The task of the Court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  *Liberty Lobby*, 477 U.S. at 249.  A genuine issue for trial exists when the evidence is not "so one-sided that one party must prevail as a matter of law."  *Id.* at 252.

### 1.  Damages Under Repealed § 723-20

As discussed above, the City's enactment of Ordinance No. 363-2009 deleted § 723-20 and therefore mooted Bench Billboard's claims for declaratory and injunctive relief with respect to that section, but Bench Billboard's claim for money damages remains.  *Brandywine*, 359 F.3d at 836; *see also Prime Media, Inc. v. City of Brentwood*, 398 F.3d 814, 824 (6th Cir. 2005).  The City of Cincinnati argues that Bench Billboard has demonstrated no monetary damages and thus cannot proceed to trial on this claim.

The City's argument — that Bench Billboard has not demonstrated any damages — is similar to an argument it made at the motion to dismiss stage of this litigation.  The City argued then that Bench Billboard lacked standing to file the action because it did not have an "injury in

16

fact," one of the three elements of standing.[17]  This Court concluded that Bench Billboard's

Complaint sufficiently alleged actual damages, namely, that it would lose advertising revenue

when the ordinance was enforced.  (Doc. 28 at 6-7.)  Discovery ensued, and it is now evident

that the City never enforced now-repealed § 723-20 against Bench Billboard.  Indeed, Bench

Billboard's president and sole shareholder Bruce Graumlich conceded at his deposition that the

ordinance had not been enforced and that lost profits were not "part of the equation." (Graumlich

Dep. at 59.)[18]

Bench Billboard now asserts a different form of damages, stating that its damages "will

be based upon the difference between the application and renewal fees paid by BBC and those

fees paid by the other advertising media allowed by the City . . . on its right of ways."  (Doc. 41-

1; *see also* Graumlich Dep. at 38.)  Bench Billboard also claims that it was damaged when, in

2005, the City removed "two, maybe six" benches located in the neighborhood of College Hill.

(*Id*. at 47.)[19]

---

[17]  "[T]he irreducible constitutional minimum of standing contains three elements.  First, the plaintiff must have suffered an 'injury in fact'— an invasion of a legally protected interest which is (a) concrete and particularized and (b) 'actual or imminent, not "conjectural" or "hypothetical."'  Second, there must be a causal connection between the injury and the conduct complained of — the injury has to be 'fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court.' Third, it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal citations omitted).

[18]  The transcript of the deposition of Bench Billboard president Bruce Graumlich was filed as doc. 85-1.

[19]  Bench Billboard's president also wants to recover from the City litigation costs he incurred when he brought a lawsuit against a business competitor to force that competitor to remove its benches from the City's right-of-way.  (Graumlich Dep. at 50-52.)  Bench Billboard provided the Court with no evidence to demonstrate that the legal fees it incurred in pursuing a private action against a competitor constituted an injury traceable to the City's revocation of its

Bench Billboard did not refute the City's evidence that the City did not remove any advertising benches from College Hill.[20]  The remaining question, then, is whether the fees Bench Billboard paid to place its benches on City property are "an injury fairly traceable to the challenged action of the defendant."  *Cleveland Branch, N.A.A.C.P. v. City of Parma, Ohio*, 263 F.3d 513, 523-24 (6th Cir. 2001) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 180-81 (2000)).  If not, then Bench Billboard does not have standing to assert its claim for damages under repealed § 723-20.[21]

Bench Billboard's First Claim for Relief is that the version of § 723-20 in effect when the Amended Complaint was filed gave the City Manager unbridled discretion to grant or deny permits for advertising benches.  The City amended § 723-20 and eliminated the language Bench Billboard complained of, and it is undisputed that the City never applied that version of § 723-20 to Bench Billboard or any other entity.  Bench Billboard does not claim that it suffered damages

---

street privilege or the enactment of the challenged ordinances.  This alleged injury is therefore insufficient to confer Article III standing to Bench Billboard.

[20]  Timothy Jamison, Acting City Engineer for the City of Cincinnati, investigated the allegation that City officials removed several Bench Billboard Company advertising benches from College Hill and found no evidence that City officials had removed any benches.  (Jamison Aff. ¶ 6, filed as doc. 87-4.)  Bench Billboard did not deny the City's proposed undisputed fact that City employees did not remove any Bench Billboard advertising benches from the College Hill neighborhood.  (*See* doc. 93-3.)

[21]  Evidence in the record regarding Bench Billboard's payment of fees to the City is vague.  The version of § 723-20 in effect in 2006 (when the City revoked Bench Billboard's special street privilege) required an advertising bench owner to pay to the City a $30 application fee for each advertising bench in the right-of-way and a $10 annual renewal fee.  There is no documentary evidence showing that Bench Billboard paid the City any fees in 2006.  (Graumlich Dep. at 30.)  Mr. Graumlich thinks he sent the City a check in 2007 along with a permit request, but he does not recall paying the City any money after that.  (*Id*. at 34-35.)  Although the Court does not have evidence demonstrating the specific amount Bench Billboard paid the City pursuant to § 723-20, the City does not dispute that it received at least some payment.

18

as a result of the provision allegedly granting the City Manager unbridled discretion, and any fees paid by Bench Billboard pursuant to the statute are unrelated to any discretion afforded to the City Manager.  Because the Plaintiff does not claim an injury in fact attributable to the now repealed unbridled discretion language of § 723-20, it lacks standing to pursue its First Claim for Relief.

The same is true with respect to Bench Billboard's Third Claim for Relief alleging that the restrictions of repealed § 723-20 were not a "reasonable fit" between the City's legitimate interest and the means it chose to serve those interests.  Bench Billboard complained that repealed § 723-20 placed stricter requirements upon advertising benches, including but not limited to higher fees, fewer quantities, and fewer locations, than upon bus shelters, newsracks, street banners, litter receptacles, or sandwich boards.  (Doc. 22 ¶ 32.)  However, Bench Billboard has not specified how the $30 application fee and a $10 annual renewal fee violated its First Amendment right to free expression.  There is no evidence in the record regarding fees charged for other types of advertising in the right-of-way except that the City charges bus shelter advertisers a fee to inspect existing and new bus stop shelters in an amount sufficient to cover the City's direct and indirect costs associated with the inspections.  (Jamison Dep. Ex. 43.)

Neither party's briefs on summary judgment discuss fees in the context of this First Amendment challenge to former § 723-20.  However, the Sixth Circuit has stated that "an ordinance requiring a person to pay a license or permit fee before he can engage in a constitutionally protected activity does not violate the Constitution so long as the purpose of charging the fee is limited to defraying expenses incurred in furtherance of a legitimate state activity."  *Deja Vu of Nashville, Inc., v. Metropolitan Gov't of Nashville and Davidson Cty*., 274

19

F.3d 377, 395 (6th Cir. 2001) (quoting *Northeast Ohio Coalition for the Homeless v. City of Cleveland*, 105 F.3d 1107, 1109 (6th Cir.1997)). The City points out that Bench Billboard received a benefit from the City for any fees it paid, namely, the right to place its advertising benches in the public right-of-way. Bench Billboard does not dispute this. In the absence of evidence, or even the allegation, that the advertising bench street privilege application and renewal fees required by repealed § 723-20 were not intended to defray expenses in furtherance of a legitimate state activity, the Court cannot conclude that Bench Billboard has suffered an injury in fact sufficient to confer it standing to challenge the ordinance on First Amendment grounds. Accordingly, Plaintiff lacks standing to pursue its Third Claim for Relief as it concerns repealed § 723-20.[22]

### 2. First Amendment Challenge to Chapter 895

Prior to June 19, 2007, Chapter 895 excluded advertising benches from the definition of "Outdoor Advertising Signs," which were defined as "a sign or graphic image painted on or affixed to the ground or structure, visible from any street, highway or other public way or park, displaying a message or promoting goods, products, services, events, activities, ideas, opinions, and candidates for public office." With the passage of Ordinance No. 226-2007, City Council

---

[22]     Because Bench Billboard lacks standing to pursue the constitutional challenge to repealed § 723-20, the Court will not address the merits of the claim. However, it is worth noting that the United States District Court for the Eastern District of Kentucky, Northern Division, considered a virtually identical claim brought by Bench Billboard against the City of Covington, located across the Ohio River from the City of Cincinnati. *Bench Billboard Company v. City of Covington*, Civil Action No. 06-75-DLB, 2010 WL 420064. The challenged ordinance in that case banned encroachments on or in the public right-of-way, including advertising benches. *Id*. at * 2 n.6. The court found that the ordinance was a reasonable content-neutral restriction on the time, place and manner of speech and did not violate the First Amendment. *Id*. at *8.

amended Chapter 895 to remove the language excluding advertising benches from the definition of Outdoor Advertising signs.  (See Bortz Dep. Ex. 8.)  Once advertising benches became subject to the regulations pertaining to outdoor signs, Bench Billboard was not able to place its benches in certain locations where it would have been able to place them prior to the amendment.  For example, it was no longer permitted to place an advertising bench within 200 feet of a school or hospital.  (See Lyons Dep. at 36.)  However, the City did not require Bench Billboard to remove benches already placed in such areas prior to the amendment.  (*Id*.)

Bench Billboard alleges that Chapter 895 of the Code is not a reasonable fit to the City's asserted governmental interests and therefore unduly burdens its exercise of its First Amendment Rights.  Bench Billboard also asks the Court to declare that Chapter 895 is unconstitutional on its face and as applied and to enjoin the City from enforcing Chapter 895 against it.  The City argues that Bench Billboard does not have standing to challenge Municipal Code Chapter 895 either facially or as applied.

Although Bench Billboard seeks a declaration that Chapter 895 is unconstitutional on its face, it has not presented the Court with any argument that might confer it standing to pursue a facial challenge.  A statute may be facially challenged on overbreadth grounds only if there is "a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court."  *Members of City Council of City of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 801 (1984).  Nothing in the record indicates that Chapter 895 will have any different impact on the free speech interests of parties not before the Court than it has on Bench Billboard.  Nor has Bench Billboard claimed that Chapter 895 grants a city official unbridled discretion or that the Chapter constitutes an invalid prior restraint on protected

21

speech.  *See Prime Media, Inc. v. City of Brentwood*, 485 F.3d 343, 351 (6th Cir. 2007).

Therefore, the Court finds that Bench Billboard lacks standing to pursue a facial challenge to

Chapter 895.

      The City argues that Bench Billboard's as-applied challenge to Chapter 895 is likewise

deficient.  The parties agree that the Chapter pertains to Bench Billboard's advertising benches

placed on private property, not on the public right-of-way.  The City states that Bench Billboard

has not proven that it had any advertising benches on private property when it filed the lawsuit

and has not verified that it has advertising benches on private property today.  Furthermore, the

City has conceded that any Bench Billboard advertising benches lawfully situated on private

property at the time the City modified Chapter 895 are considered "grandfathered" uses and are

permitted to remain.  (Lyons Dep. at 36.)  Based on these facts, the City argues that Bench

Billboard cannot demonstrate actual present harm or a significant possibility of future harm and,

therefore, lacks standing to challenge Chapter 895.

      Bench Billboard disagrees with the City's characterization of the evidence and asserts

that it has demonstrated that it has benches on private property subject to the Chapter.  First, the

Affidavit of Bench Billboard Company President Bruce Graumlich states, "BBC places its

benches on both private and public property."  (Graumlich Aff. ¶ 4.)[23]  Second, Bench Billboard

provided the City with written discovery responses identifying eight locations of advertising

benches on private property.  (*See* doc. 87-1.)  Bench Billboard further states that it has suffered

an injury in fact in the form of the loss of potential sites for advertising benches as a result of the

2007 amendment of Chapter 895.

_____

[23]  The Affidavit of Bruce T. Graumlich is filed as doc. 86-1.

The evidence provided to the Court on whether Bench Billboard has benches on private property is scant.  Bench Billboard's computer records indicate it has eight advertising benches on private property; however, the company has not verified the locations of those benches with an actual field search.  (Doc. 87-1.)  Nonetheless, Bench Billboard has presented enough evidence to establish that there is a genuine issue of fact as to whether it has benches on private property subject to Chapter 895.

However, that Bench Billboard has benches on private property is insufficient to constitute standing to challenge the constitutionality of Chapter 895.  Bench Billboard also must demonstrate that it has an injury in fact, defined as "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560-61 (internal quotations omitted).  "Concrete injury, whether actual or threatened, is that indispensable element of a dispute which serves in part to cast it in a form traditionally capable of judicial resolution.  It adds the essential dimension of specificity to the dispute by requiring that the complaining party have suffered a particular injury caused by the action challenged as unlawful." *Prime Media, Inc.*, 485 F.3d at 354.  The party invoking federal jurisdiction bears the burden of establishing the elements of standing. *Lujan*, 504 U.S. at 561.

The Amended Complaint does not allege specific injury, either actual or threatened.  Bench Billboard asserts, and the evidence shows, that recent amendments to Chapter 895 changed the potential locations for off-site advertising bench billboards on private property.  (Lyons Dep. at 36-39.)  However, this fact, even taken as true, does not demonstrate actual or imminent harm to Bench Billboard.  Rather, it demonstrates that there might be some

23

unspecified location in which Bench Billboard might at some point want to place an advertising bench and that Chapter 895 might prevent it from doing so. This is far from the "palpable and distinct" injury required to satisfy the constitutional standing requirement. *Prime Media*, 485 F.3d at 352 (citing *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974)).

In the absence of evidence showing that Bench Billboard attempted to place a bench at a particular location but was prohibited from doing so by the City's enforcement of the statute, and that this prohibition caused Bench Billboard to suffer some harm, Bench Billboard's claims concerning the constitutionality of Chapter 895 are entirely speculative. Thus, to address them, this Court "would have to take on the legislative role of speculating about the impact of the ordinance, rather than adjudicating an actual case or controversy." *Prime Media*, 485 F.3d at 353. This the Court cannot do. *See id*. at 352 (holding that the plaintiff lacked the injury-in-fact requirement of standing when it did not attempt to develop or produce a billboard that was threatened with rejection under the challenged ordinance); *see also Fieger v. Michigan Supreme Court*, 553 F. 3d 955 (6th Cir. 2009) (holding that the plaintiff's claim that he was subject to future sanction failed to establish actual harm or the threat of future harm sufficient to confer standing). This finding is consistent with prior decisions of this Court. *See*, *e.g.*, *Norton Outdoor Advertising, Inc. v. Pierce Township*, 2007 WL 1577747, at * (S.D. Ohio May 30, 2007) (holding that the plaintiff failed to demonstrate standing to assert its First Amendment and Equal Protection claims when it failed to demonstrate any injury-in-fact traceable to the challenged statute).

The City has stated that any advertising benches that Bench Billboard had lawfully placed on private property prior to the 2007 amendments to Chapter 895 are "grandfathered" and

need not be removed even if they do not comply with the revised statute. Bench Billboard has

not attempted to place any other advertising benches on private property that were challenged by

the City under Chapter 895. Bench Billboard, therefore, has not sustained any injury traceable to

the 2007 amendment of Chapter 895. On these facts, Bench Billboard has failed to satisfy the

injury-in-fact requirement of standing to challenge the constitutionality of Chapter 895 on First

Amendment grounds.

### 3. Equal Protection

Bench Billboard alleges that by subjecting it to the statutory conditions set forth in

Chapter 895 and repealed § 723-20 while allowing Lamar to place advertising bus shelters on the

right-of-way pursuant to a street privilege, and while allowing trash receptacles, street banners,

and sandwich board signs to be virtually unregulated and newsracks to be totally unregulated,

the City is violating its right to equal protection under the Fourteenth Amendment.[24] The Equal

Protection Clause prohibits discrimination by government that "either burdens a fundamental

right, targets a suspect class, or intentionally treats one different than others similarly situated

without any rational basis for the difference." *TriHealth, Inc. v. Bd. of Comm'rs, Hamilton*

*County, Ohio*, 430 F.3d 783, 788 (6th Cir. 2005) (citing *Radvansky v. City of Olmsted Falls*, 395

F.3d 291, 312 (6th Cir. 2005)). Under the latter "class of one" theory — the only theory that

applies here — the plaintiff may demonstrate that government action lacks a rational basis either

by negating every conceivable basis that might support the government action or by showing that

---

[24] Bench Billboard does not challenge revised Chapter 723, which establishes comprehensive street furniture guidelines and specifically regulates sandwich board signs, newsracks, kiosks, bus stop shelters, awnings, and other structures placed in the right-of-way. (See Ordinance 363-2009.) Accordingly, the equal protection analysis herein does not take into account revised Chapter 723.

25

the challenged action was motivated by animus or ill-will. *Id.* (citing *Warren v. City of Athens, Ohio*, 411 F.3d 697, 710-11 (6th Cir. 2005)). Bench Billboard bears the burden of demonstrating that the City's action lacks a rational basis; the City, conversely, bears no burden of proof. "Its legislative choice is presumptively valid and 'may be based on rational speculation unsupported by evidence or empirical data.'" *Michael v. Ghee*, 498 F.3d 372, 379 (6th Cir. 2007) (quoting *Warren*, 411 F.3d at 711).

When the Court considered the City's motion to dismiss Bench Billboard's equal protection claim, it found that the Amended Complaint contained allegations respecting all elements to sustain recovery under an equal protection claim. However, Bench Billboard has failed to demonstrate that a genuine issue of material fact exists or that it is entitled to judgment as a matter of law on the equal protection claim.

First, Bench Billboard did not present affirmative evidence to satisfy the threshold inquiry of its equal protection claim: that it and other individuals or entities who were treated differently "were similarly situated in all material respects." *Taylor Acquisitions, L.L.C. v. City of Taylor*, 313 F. App'x 826, 836 (6th Cir. 2009) (citing *TriHealth, Inc.*, 430 F.3d at 790). The United States District Court for the Eastern District of Kentucky recently considered virtually identical claims brought by Bench Billboard against the City of Covington, located across the Ohio River from the City of Cincinnati. *Bench Billboard Company v. City of Covington*, No. 06-75-DLB, 2010 WL 420064 (E.D. Ky. Feb. 1, 2010) (Bunning, J.). The challenged ordinance in that case banned encroachments on or in the public right-of-way, including advertising benches. *Id.* at * 2 n.6. Judge Bunning found that Bench Billboard's equal protection claim failed as a matter of law because the entities exempted under the encroachment ordinance were not

26

similarly situated in all material respects to Bench Billboard. *Id*. at *9. Specifically, TANK (the mass transit service that provided bus shelters), publishers of newsrack-ready publications, and small businesses using sandwich boards were unlike Bench Billboard, a private company selling off-side advertising on its benches. *Id*.

The *City of Covington* court's conclusions apply with equal force here. Bench Billboard had argued in that case that its advertising benches were materially similar to the *items* the city allowed to be placed in its rights-of-way. This argument misses the mark because the issue is "whether the *individuals* or *entities* responsible for the placement of those items are 'similarly situated in all material respects' to Bench Billboard." *Id*. As it was in *City of Covington*, the entities responsible for the placement of items in Cincinnati's rights-of-way that are not subject to the same restrictions as Bench Billboard are dissimilar from Bench Billboard: they each provide a distinct service or product to a different customer base. Bench Billboard is a private company that sells and displays off-site advertising on the backrests of benches. The entities placing newsracks are publishers, and the small businesses using sandwich boards in front of their businesses provide a variety of services.

Lamar, which places ads in the bus shelters, is in some respects similar to Bench Billboard; they are both private, for profit advertising companies. However, Lamar is dissimilar from Bench Billboard because of the contractual relationship it has with SORTA, a public entity. The City allows SORTA to erect bus shelters for the benefit of the public. SORTA contracts with Lamar to put advertising in the shelters as a way to defray the cost of constructing and maintaining the shelters. Without the contract with Lamar, SORTA's would have to spend approximately $250,000 a year in shelter maintenance and repair costs. Bench Billboard does

not have a contract with a public entity that defrays costs that would otherwise be borne by the public agency.

Second, even if Bench Billboard were similarly situated to Lamar in all material respects, the City has demonstrated that it has a rational basis for treating Bench Billboard differently from the other entities that place items on City sidewalks. The City cites both safety and aesthetic concerns, noting that the benches interfere with pedestrian flow, are unsafe because of sharp edges and deteriorated wood slats, and are unattractive. (*See* Bortz Dep. at 15-16, 20-21.) The City also receives complaints from the public about the general condition and placement of the advertising benches. (*Id*. at 27-28, 124-25.) Bench Billboard has not negated these bases that support the City's action, nor has it shown that the City's actions were motivated by animus or ill-will.[25] Given this evidence, the Court concludes that even if Bench Billboard were similarly situated to the other entities placing items on the right-of-way, the City has a rational basis for treating those entities differently. The City of Cincinnati is entitled to summary judgment in its favor on Bench Billboard's equal protection claim.[26]

**D. Argument That Benches Are Valid Non-Conforming Uses**

-----

[25] That Councilman Bortz bluntly said, "I want to get rid of bus bench billboards" (Bortz Dep. at 88) does not demonstrate animus or ill will when taken in the context of Mr. Bortz's other comments, namely, the fact that he has received numerous complaints from the public about advertising benches and that he was striving to improve the quality of the right-of-way in general. Mr. Bortz also expressed displeasure with the City's handling of newsracks in the right-of-way. (*Id*. at 56.)

[26] This conclusion brings the judgment of this Court in line with that of *Bench Billboard Company v. Louisville-Jefferson County Metro-Government*, 2006 WL 1895507, No. 3:05-CV-172-H (W.D. Ky. July 6, 2006) (granting the government's motion to dismiss Bench Billboard's equal protection claim) and *Bench Billboard Company v. City of Covington*, No. 06-75-DLB, 2010 WL 420064 (E.D. Ky. Feb. 1, 2010) (holding that Bench Billboard's equal protection claim failed as a matter of law).

One other issue requires discussion here. Bench Billboard argues in its motion for summary judgment that its advertising benches are lawful, non-conforming uses; that is, that it may continue to place its advertising benches in the right-of-way despite any code provision to the contrary because the benches were lawfully placed prior to City Counsel's revocation of Bench Billboard's special street privilege. The Court first became aware of this argument when reviewing Bench Billboard's motion for summary judgment, which Bench Billboard filed approximately two years after filing its complaint in this case. Neither Bench Billboard's complaint nor its amended complaint contain any argument that the advertising benches are valid non-conforming uses, nor is the argument set forth as a claim. However, in its motion for summary judgment, Bench Billboard asks the Court to "issue a mandatory injunction ordering the City to issue permits to BBC because of its non-conforming use status."

The Court cannot grant Bench Billboard this relief. Bench Billboard did not properly raise the issue as a claim. Therefore, the Court does not know if Bench Billboard is seeking this relief in conjunction with its claim the City breached the terms of the 1996 Settlement Agreement (which has been dismissed),[27] its claim that the City is violating its Fourteenth Amendment rights by not subjecting bus shelters to the same limitations as advertising benches (which claim is herein resolved in favor of the Defendant), or some other independent claim for declaratory or injunctive relief. Because Bench Billboard did not properly raise the issue of non-

---

[27] The City interpreted Bench Billboard's non-conforming use argument as related to its claim that the City had breached the terms of the 1996 Settlement Agreement and noted that the argument "disregard[ed] the Court's previous ruling that it failed to state a contract law claim upon which relief can be granted." (Doc. 94 at 14.) Indeed, the Court has already dismissed Bench Billboard's contract claim. (Doc. 28.)

conforming use status as a claim, the Court cannot grant summary judgment to Bench Billboard on that issue.

## E.  Prevailing Party

Bench Billboard finally argues that it is a prevailing party and is therefore entitled to attorney fees pursuant to 42 U.S.C. § 1988(b).  That statute provides that a court may grant attorney's fees to a "prevailing party" in lawsuits brought under certain civil rights statutes.  The Supreme Court has limited the term "prevailing party" to a party who obtains either "a judgment on the merits" or a "court-ordered consent decree."  *Buckhannon Bd. and Care Home, Inc. v. W. Va. Dept. of Health and Human Resources,* 532 U.S. 598, 600 (2001).  Therefore, a party cannot be considered a "prevailing party" under § 1988, and therefore is not eligible to receive an award of attorney's fees, where that party has neither obtained a "judgment on the merits" nor a "court-ordered consent decree." *Toms v. Taft,* 338 F.3d 519, 528 (6th Cir. 2003).  "The touchstone of the prevailing party inquiry [is] the material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute." *Texas State Teachers Ass'n v. Garland Independent School Dist.,* 489 U.S. 782, 792-93 (1989).

In *Buckhannon*, residents of an assisted living residence brought suit against West Virginia and several of its state agencies and officials, after the assisted living residence failed a fire marshal inspection because some of its residents were incapable of "self-preservation" as defined by West Virginia law.  *Buckhannon,* 532 U.S. at 600.  The plaintiffs sought declaratory and injunctive relief that the "self-preservation" requirement violated the Fair Housing Amendments Act (FHAA) and the Americans with Disabilities Act (ADA).  *Id.* at 601.  While the case was pending, the West Virginia legislature eliminated the "self-preservation"

30

requirement, and the district court granted respondent's motion to dismiss the case as moot.  *Id.*

The plaintiffs then requested attorneys fees as the prevailing party under the FHAA, 42 U.S.C. §

3613(c)(2), and the ADA, 42 U.S.C. § 12205.  *Id.*  The district court denied plaintiffs' motion,

and the Supreme Court affirmed, holding that in order for a plaintiff to be a "prevailing party"

there must be a "judicially sanctioned change in the legal relationship of the parties."  *Id.* at 605.

The Court rejected the catalyst theory, which permitted an award of attorney's fees without

judgment on the merits, stating that "[a] defendant's voluntary change in conduct, although

perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary

judicial *imprimatur* on the change."  *Id.*  Private settlement agreements that lack judicial

"approval and oversight" do not confer prevailing party status.  *Id.* at 604.

   The requirement for judicial "approval and oversight" is not satisfied even where the

court orders a party's case moot due to the defendant's voluntary change in conduct.  *See*

*Toms,* 338 F.3d at 529; *see also Sole v. Wyner,* 511 U.S. 74 (2007) (no prevailing party status

where preliminary injunction was originally ordered, but later reversed by final decision on

permanent injunction); *Hargis v. City of Cookeville, Tennessee,* 92 Fed. App'x 190 (6th Cir.

2004) (no prevailing party status where declaratory judgment was rendered moot by an

injunction in a prior case); *Raza v. Chertoff,* No. 3:07-CV-646-H, 2009 WL 111758 (W.D. Ky.

2009) (no prevailing party status where plaintiff achieved the desired outcome as a result of

defendant's voluntary change, rendering plaintiff's case moot).

   In the case at bar, Cincinnati City Council's amendment of the ordinance cannot confer

prevailing party status on Bench Billboard even if it could show that it otherwise achieved the

objective of the litigation though the City's voluntary conduct.  City Council's amendment of the

ordinance in question was neither the result of judgment on the merits nor a court-ordered consent decree, nor was it compelled through a "judicially sanctioned change on the legal relationship of the parties." *See Buckhannon,* 532 U.S. at 605.  More important, however, is that Bench Billboard frankly admits in this case that since the City's amendment of the ordinance, it "is in no better, and arguably in a worse, position than it was when it filed its initial Complaint." Doc. 111 at 3.  Bench Billboard's argument that it is now in a worse position because of the City's amendments to the challenged ordinances is irreconcilable with its argument that it is a prevailing party because of the same amendments.  Bench Billboard has not prevailed on any of its claims in this litigation.

## III.  CONCLUSION

For the foregoing reasons, Defendant City of Cincinnati's Motion to Dismiss on the Ground of Mootness (doc. 100) is GRANTED IN PART AND DENIED IN PART.  The motion is granted as to Plaintiff's claims for declaratory and injunctive relief arising out of its constitutional challenges to repealed § 723-20 of the Cincinnati Municipal Code.  The City of Cincinnati's Motion for Summary Judgment (doc. 87) is GRANTED as to Plaintiff's remaining claims.  The City's Motion to Strike Affidavits (doc. 98) and Plaintiff's Motion for Summary Judgment on the Issue of Liability Only (doc. 86) are DENIED.

IT IS SO ORDERED.

_____s/Susan J. Dlott_____

Chief Judge Susan J. Dlott
United States District Court